# THE PEOPLE *v.* DAVID HARRIS.

VOTING TWICE.—The act of voting more than once at the same election is not a crime unless done knowingly and with wrong intent.

PROOF OF INTENT TO DO WRONG.—The intent with which an unlawful act was done must be proved; but when an unlawful act is proved to have been done by the accused, the law in the first instance presumes it to have been intended, and the proof of justification or excuse lies on the defendant.

PROOF OF DRUNKENNESS IN A CRIMINAL CASE.—A defendant charged with the commission of a crime may introduce evidence to show that he was intoxicated at the time he committed the act, not as an excuse for the crime, but to enable the jury to determine whether his mental condition was such that he knew he was committing an offense.

APPEAL from the County Court, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Alexander Campbell*, for Appellant.

*J. G. McCullough*, *Attorney-General*, for the People.

By the Court, CURREY, C. J.

The defendant was indicted for voting twice at the general election held on the 6th of September, 1865. To the indict-ment he pleaded not guilty. Upon the trial he was found guilty and sentenced to be imprisoned in the State Prison for one year.

It is provided by statute that any person who shall vote more than once at any one election shall be deemed guilty of a felony, and, upon conviction, shall be imprisoned in the State Prison for a term not less than one year nor more than five years. (Laws 1858, pp. 165, 166.)

### Statement of facts.

The evidence shows that the defendant voted at the election polls of the Fifth District of San Francisco at about 10 o'clock in the forenoon of the day above mentioned, when his right to vote was challenged on the ground that he was not a resident of the district. The challenge being withdrawn the defend-ant voted. About two or three o'clock in the afternoon the defendant returned to the same polls very much intoxicated and again offered to vote. The same person who had chal-lenged his right to vote at that place in the morning informed him that he had voted before, and that he would get himself in trouble if he voted again. The defendant, in reply, vehe-mently protested that he had not voted, and declared his wil-lingness to so make oath. The oath prescribed by the statute was then administered to him by the proper officer, to which

he responded in the affirmative, and then voted the second time.

When the cause was submitted to the jury the Court charged them as follows: "The indictment charges that the defendant at an election for members for the State Senate and Assembly, held on the 6th day of September, 1865, in the Fifth Election District of this city and county, did knowingly, unlawfully and feloniously vote more than once at the same election. The language of the statute upon which the indictment is framed is, 'any person who shall vote more than once at any election   *   *   *. shall be deemed guilty of a felony.' The word *knowingly* is not in the statute, and although used in the indictment, yet it may be rejected as surplusage, for the State is not bound to support by proof the allegation in the indictment, that the act of double voting was knowingly done. The statute makes the act of voting more than once at the same election, and not the act of voting knowingly more than once at any election, a crime. If, therefore, you are satisfied from the testimony in the case that the defendant, at an election for members of the State Senate and Assembly, held on the 6th day of September, 1865, in the Fifth Election District, in this city and county, voted twice, then, although the defendant may at the time have been under the influence of intoxicating liquors, it is your duty to bring in a verdict of guilty against him; for drunkenness is no excuse or justification for the commission of a criminal act, and evidence of voluntary intoxication is properly admissible as affecting crime only in those cases in which it is necessary to ascertain whether the accused was in a mental condition which enabled him to form a deliberately premeditated purpose, and this is not one of those cases. The counsel for the defendant requests me to charge you that every crime involves a union of act and intent or criminal negligence. This is true. The law does not punish a man for his intention, nor for his act disconnected from his intention, but act and intent must unite to constitute a crime."

At the conclusion of the charge the counsel for the defend-

ant requested the Court to withdraw that portion of it which stated that the act of double voting need not be knowingly done, which the Court declined to do.

The defendant's counsel excepted to each and every portion of the charge except that given at the request of the defendant's counsel, and also excepted to the refusal of the Court to withdraw the portion of the charge which stated that the act of double voting need not be knowingly done.

The defendant's counsel asks for a reversal of the judgment, on the ground that the jury were misdirected by the Court in relation to the knowledge which it was necessary the defendant should have as to what he had done and was doing when he voted the second time, and he insists that the error of the charge was not cured by the instructions given at the defendant's request, " that every crime involves a union of act and intent or criminal negligence."

### *Evil intent necessary to constitute a crime.*

The theory upon which it was sought to exculpate the defendant of criminality was that he was in such a condition, mentally, when he voted the second time, as not to know that he had already voted, but on the contrary believed that he had not done so. It is laid down in the books on the subject that it is a universal doctrine that to constitute what the law deems a crime there must concur both an evil act and an evil intent. *Actus non facit reum nisi mens sit rea.* (1 Bish. on Cr. Law, Secs. 227 and 229 ; 3 Greenl. Ev. Sec. 13.) Therefore the intent with which the unlawful act was done must be proved as well as the other material facts stated in the indictment; which may be by evidence either direct or indirect tending to establish the fact, or by inference of law from other facts proved. When the act is proved to have been done by the accused, if it be an act in itself unlawful, the law in the first instance presumes it to have been intended, and the proof of justification or excuse lies on the defendant to overcome this legal and natural presumption. (3 Green-

86

leaf's Ev. Secs. 13, 14 and 18.) Now, when the statute declares the act of voting more than once at the same election by the same person to be a felony, it must be understood as implying that the interdicted act must be done with a criminal intention, or under circumstances from which such intention may be inferred. The defendant's counsel at the trial seems to have apprehended the true rule of law on the subject, and to have regarded the burden as on the defendant to show by evidence that the act of his voting the second time was not criminal, and for this purpose evidence of his intoxicated and excited condition was submitted to the jury, in order that they might determine under the rules of law governing in such cases whether the defendant was conscious at the time of having voted before at the same election. The question was fairly before the jury whether the defendant knew what he was about when he voted the second time. From the evidence in the case it appears he was very much intoxicated, but whether to a degree sufficient to deprive him of all knowledge of having already voted was for the jury to decide.

### *Proof of intoxication by one charged with a crime.*

The law does not excuse a person of a crime committed while in a state of voluntary intoxication. In *Rex* v. *Thomas,* 7 Car. & Payne, 817, Parke, B., said to the jury : " I must tell you that if a man makes himself voluntarily drunk, it is no excuse for any crime he may commit whilst he is so ; he takes the consequences of his own voluntary act, or most crimes would go unpunished ;" and to the same effect is the language of Alderson, B., in *Rex* v. *Meakin,* 7 Car. & Payne, 297 ; and in harmony with this doctrine is the whole current of English authority. (1 Whar. Cr. Law, Sec. 39.) Mr. Wharton says that in this country the same position has been taken with marked uniformity, it being invariably held that voluntary drunkenness is no defense to the *factum* of guilt ; the only point about which there has been any fluctuation being the extent to which evidence of drunkenness is receivable to

determine the exactness of the intent or extent of deliberation."
(Id. Sec. 40.)   In *Pigman* v. *The State*, 14 Ohio, 555, it was
held that a man who passes counterfeit money is not crimi-
nally liable if he is so drunk as to be incapable of knowing
that it is counterfeit, and consequently of entertaining the
intention to defraud, provided there was no ground to suppose
he knew the money to be counterfeit before then; and in
*Swan* v. *The State*, 4 Humph. 136, 141, the Supreme Court of
Tennessee said : " Although drunkenness, in point of law, con-
stitutes no excuse or justification for crime, still, when the
nature and essence of a crime is made by law to depend upon
the peculiar state and condition of the criminal's mind at the
time, and with reference to the act done, drunkenness as a
matter of fact affecting such state and condition of the mind
is a proper subject for consideration and inquiry by the jury.
The question in such case is what is the mental status ?"

In *Reg.* v. *Moore*, 3 Car. & Kir. 319, the defendant was
indicted for an attempt to commit suicide by drowning, and
in defense it was alleged she was unconscious from drunken-
ness at the time of the nature of the act.   The Court was of
the opinion that if she was so drunk as not to know what she
was about, the jury could not find that she intended to destroy
herself.   (*Reg.* v. *Cruse*, 8 Car. & Payne, 546 ; *United States*
v. *Rondenbush*, 1 Bald. 517 ; *Kelly* v. *The State*, 3 Sm. & Marsh.
518 ; *Pirtle* v. *The State*, 9 Humph. 663 ; *Haile* v. *The State*,
11 Humph. 154.)

While the condition of the accused, caused by drunkenness,
may be taken into consideration by the jury with the other
facts of the case, to enable them to decide in respect to the
question of intent, it is proper to observe that drunkenness
will not excuse crime.   (*People* v. *King*, 27 Cal. 514.)   The
inquiry to be made is whether the crime which the defendant
is accused of having committed *has in point of fact been com-
mitted*, and for this purpose whatever will fairly and legiti-
mately lead to the discovery of the mental condition and status
of the accused at the time, may be given in evidence to the
jury, and may be considered by them in determining whether

the defendant was in fact guilty of the crime charged against him. Great caution is necessary in the application of this doctrine, and those whose province it is to decide in such cases should be satisfied beyond a reasonable doubt, from all the facts and circumstances before them, that the unlawful act was committed by the accused when his mental condition was such that he did not know that he was committing a crime, and also that no design existed on his part to do the wrong before he became thus incapable of 'knowing what he was doing.

We have said more respecting the character of the defense or excuse imposed than would have been necessary, but for the reason that it is important that those who may be guilty of violating the law may understand that a state of intoxication can be of no avail as an excuse for crime.

### *Voting twice at same election.*

The Court told the jury, as we have seen, that the statute makes the act of voting more than once at the same election, and not the act of voting knowingly—that is, intentionally—more than once at any one election, a crime. The Court further charged the jury, in substance, that evidence of voluntary intoxication is properly admissible as affecting crime only in those cases in which it is necessary to ascertain whether the accused was in a mental condition which enabled him to form a deliberate premeditated purpose to commit the offense; but in the same connection the jury were told in effect that the case before them was not one of those cases in which the defendant could interpose the defense that he was intoxicated to a degree rendering him unconscious of what he had done and of the wrong which he was doing. The Court then instructed the jury, at the request of the defendant's counsel, that every crime involves a union of act and intent or criminal negligence. That the law does not punish a man for his intention, but that act and intent must unite to constitute a crime ; but at the same time the Court refused to modify in

any degree the charge already given, though especially requested so to do.

Taking these two portions of the charge together we may understand the Court as declaring :

First—That a crime is constituted by the commission of a forbidden act, united with a felonious intent on the part of him who does the act or caused it to be done.

Second—That the act of voting more than once at the same election was a crime, even though not done with knowledge on the part of him who so votes that he was voting the second time.

Third—That the case before the jury was not one in which the defendant could show that by reason of his intoxicated condition he did not know what he was doing when he voted the second time.

We do not see how these charges, involving the question of felonious knowledge or intention can be harmonized. The second and third stand in direct antagonism to the first, and the greater prominence was given to the one of which the defendant complains and which we think to be erroneous. We are of the opinion the Court erred also in excluding from the jury any consideration of the mental status of the defendant by reason of his intoxicated condition when he voted the second time.

The judgment is reversed and a new trial ordered.

Mr. Justice SAWYER expressed no opinion.