[Crim. No. 1150. Second Appellate District, Division Two.—February 10, 1925.]

THE PEOPLE, Respondent, v. JOE MACIEL, Appellant.

[1] CRIMINAL LAW — ASSAULT WITH DEADLY WEAPON TO COMMIT MURDER—INSTRUCTIONS.—In a prosecution for an assault with a deadly weapon with intent to commit murder, the refusal to give an instruction asked by the defendant that "in order to justify a verdict of guilty of the crime of assault with intent to commit murder, the facts and circumstances proven in a case must be such that, if death had resulted from the shooting, the crime would have been murder and not manslaughter; for if the crime in the case of death would have been only manslaughter, the defendant cannot be convicted of the offense charged, though he might be of assault with a deadly weapon," was not reversible error where the general instructions given by the trial court were to the effect that in order to justify a conviction of the greater offense the jury must believe beyond a reasonable doubt that defendant made the assault with the intent to murder.

[2] ID. — EXISTENCE OF SPECIFIC INTENT — INSTRUCTIONS. — In such prosecution, where the trial court had instructed the jury upon the proposition that the presence of the specific intent to murder is an essential ingredient of the crime of assault with intent to commit murder, the refusal to state the same proposition in another form was not prejudicial error.

[3] ID.—SPECIFIC INTENT—PRESUMPTION—BURDEN OF PROOF—ERRONEOUS INSTRUCTION—FACT.—In such prosecution, an instruction declaring that "when the act committed by the accused is of itself an unlawful act, the law, in the first instance, presumes the criminal intent, and the burden of proof falls upon the defendant to show the absence of criminal intent," violates the rule that whenever a specific intent is an essential ingredient of the offense no presumption of law can arise as to the existence of such intent, for it is a fact to be proved like any other fact in the case.

[4] ID.—INTENT—PRESUMPTIONS.—It is only when the intent is not made an affirmative element of the crime that the law presumes that the act, if knowingly done, was done with a criminal intent.

[5] ID.—SPECIFIC INTENT—FACT—EVIDENCE.—When a specific intent is an element of the offense it presents a question of fact which must be proved like any other fact in the case. It is none the

3. See 13 R. C. L. 800; 8 Cal. Jur. 26.
5. See 13 Cal. Jur. 753, 754.

less a question of fact though it cannot be proved by direct and positive evidence. All the circumstances surrounding the act furnish the evidence from which the presence or absence of the specific intent may be inferred by the jury; and no presumption of law can ever arise that will decide it.

[6] ID.—INSTRUCTION NOT CURED BY OTHER INSTRUCTIONS.—In such prosecution, the vice of the instruction that when the act committed by the accused is unlawful the law presumes the "criminal intent" was not cured by what was said in other parts of the charge to the effect that the defendant could not be convicted of the crime of assault with a deadly weapon with an intent to commit murder unless the jury believed beyond a reasonable doubt that the assault was committed with such intent to murder.

[7] ID.—EVIDENCE—SECTION 4½, ARTICLE VI, CONSTITUTION.—In such prosecution, such instruction to the effect that when the act committed by the defendant is unlawful the law presumes the "criminal intent," and the burden of proof falls upon the defendant to show the absence of "criminal intent," is beyond the reach of the saving grace of section 4½ of article VI of the constitution.

(1) 16 C. J., p. 1063, n. 85; 17 C. J., p. 352, n. 52; 30 C. J., p. 23, n. 41, p. 24, n. 44.    (2) 16 C. J., p. 1063, n. 85; 17 C. J., p. 352, n. 52; 30 C. J., p. 20, n. 18.    (3) 16 C. J., p. 80, n. 45, p. 81, n. 61; 30 C. J., p. 22, n. 30, p. 324, n. 76, p. 354, n. 69.    (4) 16 C. J., p. 80, n. 45, p. 81, n. 61.    (5) 16 C. J., p. 80, n. 45, p. 81, n. 61, 62; 30 C. J., p. 22, n. 29.    (6) 16 C. J., p. 1054, n. 96, 98. (7) 17 C. J., p. 369, n. 6.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. W. B. Wallace, Judge. Reversed.

The facts are stated in the opinion of the court.

W. G. Machetanz for Appellant.

U. S. Webb, Attorney-General, John W. Maltman and John L. Flynn, Deputy Attorney-Generals, for Respondent.

FINLAYSON, P. J.—Defendant, who was charged with an assault upon one Estaban Rosas with a deadly weapon with an intent to commit murder, was found guilty as charged. He now appeals from the judgment of conviction and from an order denying his motion for a new trial. It is claimed that the court erred in refusing to give certain

requested instructions, and that one of the instructions given was prejudicially erroneous.

Defendant and Rosas occupied adjoining premises in the city of Tulare. A toilet located in the rear of defendant's premises was used in common by both defendant and the members of the Rosas family. On the day of the alleged offense the two men met as Rosas was on his way to the toilet. A quarrel ensued, in the course of which blows were struck. After a few minutes of fighting defendant went into his house and procured a pistol. Rosas' version of what followed after the first altercation, reduced to narrative form, is substantially as follows: "Defendant went into his house and I proceeded to the toilet. As I came out of the toilet and had taken three or four steps, defendant, who had come out of his back door with a pistol in his hand, fired two shots at me. Neither shot struck me. Though I was unarmed, I went toward him, and he came toward me. We met and I grabbed him by the collar with my right hand, and with my left I tried to take the pistol away from him. Then he fired the third shot. That one struck me. I was about thirty feet from him when he fired the first shot. It was closely followed by the second. I took about five steps after the second shot before I reached him. I wasn't afraid when I advanced toward him after the first shot, for I did not believe he would shoot me if I walked toward him. But I thought that if I turned around and went away that then he would shoot me." Defendant's version of the affair is substantially this: "When I entered my house after the first altercation Rosas followed me. I took the pistol from under a pillow and ordered Rosas out of the house. After we got outside and I was turning to re-enter my house, he caught hold of me and pulled me out. A struggle followed, in the course of which the three shots were fired. At no time did I intend to kill Rosas."

The court, in the main, charged the jury fully and fairly as to the law applicable to the case. The learned trial judge, recognizing that the specific intent to murder is an essential ingredient of the offense with which defendant was charged, was at considerable pains to instruct the jurors that before they could convict him of the greater offense, i. e., of assault with a deadly weapon with intent to commit murder, they must believe to a moral certainty and beyond a reasonable

doubt not only that he committed an assault upon Rosas with a deadly weapon, but that he did so with malice aforethought and with the intention of taking the life of Rosas; also that if the jurors believed that defendant committed an assault with a deadly weapon but had a reasonable doubt that it was made with intent to commit murder, they should find him guilty of the lesser offense of assault with a deadly weapon.

[1] The court refused to give the following instruction, asked by defendant; ''You are instructed that in order to justify a verdict of guilty of the crime of assault with intent to commit murder, the facts and circumstances proven in a case must be such that, if death had resulted from the shooting, the crime would have been murder and not manslaughter; for if the crime in the case of death would have been only manslaughter, the defendant cannot be convicted of the offense charged, though he might be of assault with a deadly weapon.'' This instruction is sound law and might well have been given. (*People* v. *Landman,* 103 Cal. 577 [37 Pac. 518].) We think, however, that the general instructions given by the court whereby the jury was charged, in substance and effect, that in order to justify a conviction of the greater offense they must believe beyond a reasonable doubt that defendant made the assault with the intent to murder Rosas, were sufficient to advise the jury upon the subject of specific intent. It follows that the refusal to give the instruction was not reversible error.

[2] Three other instructions requested by the defendant were refused by the court. Each of them, if given, would have charged the jury, in substance and effect, that the presence of the specific intent to murder is an essential ingredient of the crime of assault with intent to commit murder. Though these instructions stated the law correctly, their refusal was not error entitling appellant to a reversal. The same proposition—stated, it is true, in language more general than that of the requested instructions—had been clearly announced by the court in the instructions which it gave. The instructions which were given upon the subject of specific intent were neither colorless nor too general. The refusal to state the same proposition in another form was not prejudicial error.

[3] We come now to a more serious objection, and one which we are constrained to hold necessitates a reversal of the judgment. The court gave this instruction: "In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence; but when the act committed by the accused is of itself an unlawful act, the law, in the first instance, presumes *the criminal intent,* and the burden of proof falls upon the defendant to show the absence of *criminal intent."* (Italics ours.) It is contended, and we think rightly so, that this instruction violates the rule that whenever a specific intent is an essential ingredient of the offense no presumption of law can arise as to the existence of such intent, for it is a fact to be proved like any other fact in the case.

The first part of the instruction is based on, and is in the language of, section 20 of the Penal Code. But the last part is erroneous, and we think it was also prejudicial. If the court had charged the jury that when the act committed by an accused is unlawful the law raises a disputable presumption that the act was intended, and that the person doing it, if he did it voluntarily, also intended the ordinary consequences of his act, the instruction would have stated a rule of evidence substantially as declared in subdivisions ˚2 and 3 of section 1963 of the Code of Civil Procedure. ". . . the effect of these statutory rules of evidence," says the court in *People* v. *Abbott,* 2 Cal. Unrep. 387 [4 Pac. 769, 772], "is that when the act is proved to have been done by the accused, if it be an act in itself unlawful, the law in the first instance presumes it to have been intended, and the proof of justification or excuse lies on the defendant to overcome this legal and natural presumption." (See, also, *People* v. *Harris,* 29 Cal. 681.) Had the court worded its instruction so as to state the law substantially as it is declared in these code provisions, it would have been properly applicable to the lesser offense of an assault with a deadly weapon; and in that event appellant, if he had desired to limit the instruction to a declaration that it did not apply to the greater offense of an assault with intent to commit murder, would have been obliged to request the court so to declare. (*People* v. *Ramirez,* 64 Cal. App. 358 [221 Pac. 960].)

But the court did not give the instruction contemplated by subdivisions 2 and 3 of section 1963. Instead, it gave an instruction the vice of which lies in the fact that it goes beyond the rule that an accused who has done an unlawful act is presumed to have intended to do that act, and broadly asserts that when the act committed by an accused is unlawful the law presumes "the criminal intent," without telling the jury what is the criminal intent which the law presumes in such cases. As used in this instruction the words "criminal intent" are broad enough to include any and every unlawful intent which is embraced within the crime charged against appellant. Included within the charge is the specific intent to murder Rosas, as well as the intent to do the unlawful act, i. e., the intent to discharge the loaded weapon. The fair interpretation of the language of the instruction is that, from the mere fact that the shots were unlawfully fired at Rosas, if they were so fired, the law raises the presumption that appellant not only intended to discharge his pistol but that he discharged it with the specific intent to commit murder, and that the burden was cast upon him to show the absence of such specific intent. A jury of laymen would so understand it, beyond any doubt.

Looking at the instruction as the jury unquestionably must have viewed it, it is clearly erroneous, for it trenches upon the province of the jury to pass upon all matters of fact. [4] It is only when the intent is not made an affirmative element of the crime that the law presumes that the act, if knowingly done, was done with a criminal intent. (16 C. J., p. 81.) [5] When a specific intent is an element of the offense it presents a question of fact which must be proved like any other fact in the case. It is none the less a question of fact though it cannot be proved by direct and positive evidence. All the circumstances surrounding the act furnish the evidence from which the presence or absence of the specific intent may be inferred by the jury; and no presumption of law can ever arise that will decide it. (*People* v. *Mize,* 80 Cal. 41 [22 Pac. 980]; *People* v. *Perini,* 94 Cal. 573, 575 [29 Pac. 1027]; *People* v. *Landman, supra; People* v. *Johnson,* 106 Cal. 289, 295 [36 Pac. 622]; *Patterson* v. *State,* 85 Ga. 131 [21 Am. St. Rep. 152 [11 Pac. 620].) In *Patterson* v. *State, supra,* the court says: "It

[the specific intent] does not require direct or positive proof, but the circumstances must be such as would authorize the jury (and not the court) to infer the intent with which the act was done. . . . Where one is charged with assault with intent to murder, and it is proved that he fired a loaded pistol at another, there is no presumption of law that he intended to murder the person thus fired at.''

[6]   The vice of the instruction was not cured by what was said in other parts of the charge to the effect that the defendant could not be convicted of the crime of assault with a deadly weapon with an intent to commit murder unless the jury believed beyond a reasonable doubt that the assault was committed with such intent to murder. The force of the objectionable instruction was left untouched, and its meaning was left unchanged and unimpaired. It and the other instructions, when considered together, amounted to no more than this: ''To warrant the jurors in convicting the defendant of the crime of assault with a deadly weapon with intent to commit murder they must believe beyond a reasonable doubt that the defendant assaulted Rosas with a deadly weapon, with malice aforethought and with the intention of taking the life of Rosas; but if the evidence shows that defendant unlawfully discharged a loaded pistol at Rosas, that act in itself will be sufficient ground for the jury to infer the existence of such malice aforethought and intent to kill.'' (See *People* v. *Mize, supra.*)

[7]   The erroneous instruction is beyond the reach of the saving grace of section 4½ of article VI of the constitution. It would have been otherwise had appellant been convicted of the lesser offense of assault with a deadly weapon. But he was convicted of the greater offense. To constitute the offense of which he was found guilty the circumstances must be such as to authorize the jury, not the court, to infer the existence of the specific intent to murder. We cannot say, after a consideration of the entire evidence, that if this instruction had not been given the jury ought, nevertheless, to have found appellant guilty of an assault with intent to commit murder. Even if we leave out of consideration appellant's testimony to the effect that at no time did he intend to kill Rosas, the circumstances testified to by the com-

plaining witness do not permit of only one reasonable conclusion. The first shot, according to the evidence adduced by the prosecution, was fired when Rosas was about thirty feet away, and the second when he was within a distance of approximately five steps. With respect to those shots the evidence would have warranted the jury in adopting one of two possible theories, if the objectionable instruction had not been given; and whichever of these two theories the jury had adopted, we could not have said that it was not a reasonable inference from all the circumstances of the case. These two possible theories are: 1. That when defendant fired the shots he actually intended to kill Rosas but his marksmanship was so poor that he missed his victim; 2. That defendant would have killed his enemy had he dared, but his nerve failed him and therefore he purposely fired wide of the mark intending to frighten Rosas but also intending that neither bullet should reach the object of his wrath. Something akin to this second theory must have been entertained by Rosas; for he testified that he was not afraid to advance toward the defendant after the first shot was fired, because he believed that so long as he faced the accused the latter would not shoot him. Which of the two possible inferences mentioned by us should be deduced from the circumstances, or whether some other possible and reasonable inference should be drawn, was a matter which only the jury could decide. The third shot, the one which wounded Rosas, was fired during the scuffle; and it might be that the jury, but for the erroneous instruction, would have concluded that this shot was fired as the result of an unintentional discharge of the weapon while the two men were grappling with each other. In brief, the circumstances are such that we cannot possibly say that the jury would have brought in the verdict which it did if it had received only proper instructions. Under these circumstances we would not be justified, even under the liberal provisions of section 4½, in disregarding the error and denying a new trial. (*Langford* v. *San Diego etc. Ry. Co.*, 174 Cal. 734 [164 Pac. 398].)

The judgment and order denying a new trial are reversed.

Works, J., and Craig, J., concurred.