[Crim. No. 36191. Second Dist., Div. Two. May 1, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ALLEN DAY BELTON, Defendant and Appellant.

## COUNSEL

Michael W. McIsaac, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow, Gary R. Hahn and Pamela Polak Cvitan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FLEMING, J.**—Belton appeals a judgment of conviction for attempted murder, second degree (Pen. Code, §§ 664, 187, 189), and for two counts of arson (Pen. Code, § 447a), which resulted in his sentence to prison for four and one-half years. He contends the trial court erred in denying his motion for acquittal on the second arson count and on the attempted murder count.

As required by the usual rule governing appellate review, we evaluate the evidence in the light most favorable to the challenged ruling.

On May 7, 1978, about noon defendant visited Miriam Belton, his ex-wife, at her apartment. The parties had been married for some years, and defendant had formerly owned the apartment building in which Mrs. Belton lived, which, however, he had deeded to her at the time of

the parties' separation. Defendant stayed all day, and the two did some drinking together. About 9 p.m. defendant left the apartment at Mrs. Belton's request. At that time he had no visible injuries. Sometime after midnight Mrs. Belton was awakened by a crackling sound of burning wood outside her bedroom window. She looked out, saw flashes of light, and saw defendant lying in the grass 10 feet away. She also smelled smoke. She thereupon ran from the apartment building with her children.

About the same time the tenant of an adjoining apartment, William Warren, heard someone moving on his front porch and saw flames from his window. When he opened his door he discovered flames coming from under the porch of Mrs. Belton's apartment, and he saw an isolated patch of fire in the grass to the right of the porch, where defendant was "[s]watting at the fire [coming from his body or clothing] and rolling around in the grass." Warren recognized the defendant, who had been his landlord for six years. Since he thought defendant had the fire on his person under control, Warren reentered his apartment to call the fire department. When he stepped outside again, defendant had disappeared.

Los Angeles Fire Department Arson Investigator Jerry Brittenham examined the premises about 1 a.m., observed the damage to the basement of the triplex apartment and to the interior wall of Mrs. Belton's bedroom, and concluded the fire had been of "incendiary origin, caused by an open flame and human hand." He noticed an odor of gasoline on the grass around the house, and he found a melted plastic milk carton with an odor of gasoline in the charred area of the fire.

About 5:30 that same morning Mrs. Belton, who was in a neighbor's apartment, heard sirens and saw her apartment building again on fire. Investigator Brittenham returned, and after further investigation concluded that the second fire was likewise of incendiary origin caused by a flammable liquid.

Photographs of defendant on May 11, 1978, showed burns on his hands and second-degree burns on his face.

1. *Sufficiency of Evidence—Second Fire.* Defendant contends the evidence was insufficient to convict him of arson for the setting of the second fire. We see little merit to this contention. ■ Circumstantial

evidence may be relied upon to establish culpability for arson. (*People v. Beagle* (1972) 6 Cal.3d 441, 449 [99 Cal.Rptr. 313, 492 P.2d 1].) Significant factors include prior presence in the building, lack of evidence showing natural or accidental cause, evidence of intentional (incendiary) cause, and more than one fire with temporal or spatial proximity. (*Id.*, pp. 449-450.) Each of these factors was present at bench. Defendant necessarily concedes the evidence was sufficient to prove he set the first fire, and since the second fire closely followed the first in point of time and in method of origin, an inference could be drawn by the trier of fact that defendant had set the second fire, an inference sufficiently strong to support his conviction on the second arson count.

2. *Insufficiency of Evidence—Attempted Murder.* Defendant contends the trial court erred in denying his motion to dismiss the charge of attempted murder of Mrs. Belton, in that there was no evidence he started the fires in his ex-wife's apartment building with the specific intent to murder her. We agree.

■ To prove murderous intent the People rely on the fact that in February 1978, some three months before the fires, the police had been summoned to the residence of Mrs. Belton to quell a domestic disturbance in the course of which defendant slapped and struck his ex-wife. However, according to Mrs. Belton's trial testimony, the battery had not since been repeated. We think any deduction of murderous intent from a quarrel three months earlier is entirely speculative and conjectural. On the night of the fires the parties spent the day drinking together in reasonable tranquility. No threats or talk of arson had been advanced, then or earlier. Nothing in the evidence supports an inference that in starting these fires defendant wanted to murder anyone. It would be equally plausible to speculate that he started the fires to impoverish his ex-wife by destroying her property, or, as suggested by some of the evidence, that he wanted the apartment building modernized and rebuilt at the insurance company's expense (which in fact happened).

■ Specific intent to kill is a necessary element of attempted murder. It must be proved, and it cannot be inferred merely from the commission of another dangerous crime. For example, intent to murder cannot be inferred from commission of the crime of assault with a deadly weapon, and a charge of assault-with-a-deadly-weapon-with-intent-

to-murder requires proof of specific intent to murder above and beyond proof of the assault with a deadly weapon. (*People* v. *Maciel* (1925) 71 Cal.App. 213 [234 P. 877]; *People* v. *Miller* (1935) 2 Cal.2d 527 [42 P.2d 308].) We think the same is true of murderous intent in the commission of the crime of arson. Just as proof of assault with a deadly weapon does not itself provide the basis for an inference of intent to murder, so proof of arson of an inhabited building does not itself provide the basis for an inference of attempted murder. More is needed to establish murderous intent, which cannot be presumed solely from the commission of some other crime, but which must be affirmatively proved by direct evidence or by solid inference. (*People* v. *Snyder* (1940) 15 Cal.2d 706, 708 [104 P.2d 639]; *People* v. *Maciel* (1925) 71 Cal.App. 213 [234 P. 877]; *People* v. *Miller* (1935) 2 Cal.2d 527 [42 P.2d 308].)

At bench, there is a dearth of evidence to establish that defendant set the fires with an intent to murder Mrs. Belton. There were neither threats of personal injury, vows of vengeance, conversations about contemplated personal violence, or earlier attempts at murder. As noted above, specific intent to murder cannot be presumed merely from the defendant's setting fire to an inhabited building. Because the record discloses no proof of defendant's specific intent to murder and because that intent cannot reasonably be inferred from the evidence, defendant's conviction for attempted murder cannot stand.

Defendant's conviction on two counts of arson is affirmed; his conviction for attempted murder, second degree, is reversed for insufficiency of evidence, and the charge is dismissed. The cause is remanded to the trial court for resentence on two counts of arson.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied May 29, 1980, and respondent's petition for a hearing by the Supreme Court was denied July 2, 1980. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.