584 P.2d 53

STATE of Arizona, Appellee,

v.

Emmeric A. WILSON, Appellant.

No. 1 CA–CR 2665.

Court of Appeals of Arizona,
Division 1,
Department C.

April 25, 1978.

Rehearing Denied July 28, 1978.

Review Denied Sept. 12, 1978.

Bruce E. Babbitt, former Atty. Gen., John A. LaSota, Jr., Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

OPINION

WREN, Judge.

Appellant was charged with attempted theft from a person in violation of A.R.S. §§ 13–661 and 13–663, and A.R.S. §§ 13–108, 13–109 and 13–110. He later executed a waiver of trial by jury, and on January 7, 1977, the trial court found him guilty of the offense charged. He now appeals from the judgment of guilt and sentence imposed thereon.

The sole issue on this appeal is whether there was sufficient evidence to sustain the conviction. Accordingly we will set forth a summary of the testimony presented. The State's chief witness was the investigating officer, Manuel M. Gonzales. Gonzales' testimony revealed that at approximately 7:00 p. m. on August 14, 1976, he was proceeding

in his patrol car on Central Avenue in Phoenix, Arizona, when he observed the victim walking northbound on the sidewalk. Ahead of the victim were two men, one being the appellant. According to the officer, as the two men approached the victim, appellant reached for a handbag the victim was carrying. The officer further testified that the victim and appellant had joint contact with the handbag for approximately ten to fifteen seconds, and that thereafter, as the patrol car approached, appellant released the handbag, and proceeded to walk south on Central Avenue at a normal pace. The officer then exited his patrol car, spoke with the victim briefly, returned to the car, made a U-turn on Central Avenue, and proceeded south to the front of a liquor store where he apprehended appellant.

Appellant took the witness stand in his own behalf and testified that he and a friend had been drinking and playing basketball on the day in question. They were walking south on Central on their way to a liquor store when they picked up several rocks and began throwing them. During the walk, they observed the victim and noticed he looked "like a little bum, or raggedy." Appellant testified that he was merely joking with the victim, that he did not intend to take the bag but merely wanted to throw a rock into it. He stated "it didn't look like [he] had a solid penny. Those were one of the reasons I was thinking about giving him the rock. At least he'd have something."

The victim in the case apparently had a hearing difficulty thus written questions were propounded to him which he answered in writing. One of the questions asked was whether he had found a rock in his bag after the incident, but he failed to answer that question. He was then asked whether he had looked in the bag, and he responded that he had not. The officer, however, testified that at the time he questioned the victim, he put his hand inside the bag and did not notice a rock, but he did not empty its contents to determine what it contained. At the time appellant was arrested, he had a rock in his pocket.

Appellant, relying on *State v. Vitale,* 23 Ariz.App. 37, 530 P.2d 394 (1975), contends the evidence was insufficient to support the verdict, urging that the crime of *attempt* requires proof of an overt act *and* a specific intent, and that the specific intent must be proven by evidence other than the overt act itself. He asserts that the only proof of any intent to steal property from the victim was the overt act of grabbing his handbag. Accordingly, he submits, there being no probative evidence other than the overt act itself to support the conviction of attempted theft from a person, the conviction must be reversed.

The State argues, on the other hand, that under *State v. Rodriguez,* 114 Ariz. 331, 560 P.2d 1238 (1977), the requisite intent and the overt act can be shown by the same evidence and that the intent to do an act may be inferred or presumed from the circumstances of the doing of the act itself. It is the State's position that *State v. Vitale,* which is bottomed on *Elfbrandt v. Russell,* 97 Ariz. 140, 397 P.2d 944 (1964), incorrectly states the law. It points out that *Rodriguez* expressly refused to follow the rationale of *People v. Snyder,* 15 Cal.2d 706, 104 P.2d 639 (1940), which was the authority cited for the ruling in *Elfbrandt.*

In attempting to resolve the confusion generated by these cases, we first note that *Rodriguez* is clearly distinguishable from the case before us. The appellant *Rodriguez* was convicted of second degree burglary. Thus in *Rodriguez* the crime went beyond a mere attempt. Moreover, the Arizona Supreme Court in *Rodriguez* distinguished *Snyder* on the basis that *Snyder* dealt with *attempted* murder. Therefore, in *Snyder,* "the issue was whether the defendant had the specific intent to commit murder. The defendant had not actually killed the victim, so that became an important element to be proved." 114 Ariz. at 333, 560 P.2d at 1240.

While the State is correct in asserting, as noted in *Rodriguez,* that generally a specific intent to do an act may be inferred or presumed from the circumstances of the doing of the act itself, the case law noted

by appellant appears to reject that concept as to overt acts and charges of attempted crimes. These deviations, it seems to us, appear to arise from the *nature* of the completed crime toward which the attempt has been directed and not by the fact that only an attempt to commit that crime has been charged.

In *State v. Vitale,* a decision by Division 2 of this Court, the bold statement was made that "the crime of attempt requires proof of an overt act and specific intent, which must be proven by evidence other than the overt act itself." 23 Ariz. App. at 44, 530 P.2d at 401. *Vitale* should not, however, in our opinion, be blindly followed as an abstract principle of law. Obviously the word "attempt" means to try; it implies an effort to bring about a desired result. *See* Webster's Third New International Dictionary, 140 (1966). Hence an attempt to commit any crime requires an intent to commit that particular offense. While there can be no attempt to commit a crime without such specific intent, it must be borne in mind that the law attaches its own labels to intents the same as it does to results. If the required intent is actually lacking it cannot be supplied by any mere jingle of words—such as that a man is presumed to intend the natural and probable consequences of his act. The intent cannot be implied as a matter of law; it must be proven as a matter of fact from the acts involved.

Obviously there are times when intent may be inferred from conduct where it is plainly indicated as a matter of logical probability. The use of instruments capable of producing an abortion upon a pregnant woman in a manner calculated to have that result will support an inference of an actual intent to procure an abortion, even in the total absence of any other evidence or reasonable explanation. *See Scott v. People,* 141 Ill. 195, 30 N.E. 329 (1892). On the other hand, it is important to note that one, with only mischief in his mind, may actually take a step in the direction of a criminal offense without attempting to commit that crime if his state of mind does not include an intent to commit it. In this case, it is urged by appellant that a specific intent to steal cannot be presumed or inferred from the fact that he touched the victim's bag. He argues the evidence is devoid of other acts from which such intent could be inferred. He points out that he did not run from the officer nor from the victim. When apprehended he denied that he was doing anything other than joking, and that he had been generally "hassling" people that day by walking down the street throwing rocks at them. The only evidence as to intent, he claims, was his own testimony that he was just playing around.

As previously stated, the statement in *Vitale* that evidence other than the overt act itself is needed to prove a specific intent, cites as its genesis, *Elfbrandt v. Russell.* In our opinion both *Vitale* and *Elfbrandt* are distinguishable from the case under consideration because of the nature of the crimes there charged. *Vitale* involved a conviction for attempting to receive stolen property. The defendant had denied knowledge that the television set he possessed was stolen. It is to be noted that the act of possessing stolen property is legally insufficient to establish the requisite knowledge that it was stolen, or even an intent to possess stolen property. *State v. Hull,* 60 Ariz. 124, 132 P.2d 436 (1942); *State v. Archer,* 23 Ariz.App. 589, 534 P.2d 1083 (1975). Evidence on intent separate and apart from the completed act of "receiving" was therefore required.

In *Elfbrandt* the defendant was charged with committing or aiding in the commission of an act in an attempt to overthrow the government or any of its political subdivisions. The Arizona Supreme Court, in discussing the question of "guiltless knowing behavior", stated that the statute[1] required a specific intent to overthrow and that such intent could not be implied from the commission of the overt act itself, but must be proven by evidence or facts other than those establishing such act, citing for comparison *People v. Snyder.*

---

1. A.R.S. § 38–231(E).

Again referring to *Rodriguez,* the Supreme Court in refusing to adopt the rule enunciated by *Snyder* as an absolute proposition of law, went on to note that the crime charged in *Rodriguez* was burglary and that the requisite intent to commit a burglary may not be inferred from mere entry or theft alone.

The elements of the crime of attempted theft are: (1) the intent to commit theft and (2) an overt act toward the commission thereof. *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841 (1970); *State v. Westbrook,* 79 Ariz. 116, 285 P.2d 161 (1954). The fundamental reason behind the requirement of an overt act in the "attempt" statute is that until such act occurs, there is too much uncertainty that a design is to be carried out. Until that time arrives the situation is equivocal. *State v. Vann,* 11 Ariz.App. 180, 463 P.2d 75 (1970) is illustrative:

> "It is the position of the defendant that his mere request for money did not indicate an intent to rob, nor did the placing of his hand in his pocket constitute an overt act. Intent, being a state of mind, proof of intent generally must be circumstantial in nature. What the defendant does or fails to do and what he says may be evidence of what is going on in his mind." *State v. Vann,* 11 Ariz.App. at 181–182, 463 P.2d at 76.

We are unable to discern any reason for restricting the application of the principle of inferred intent to charges of a completed crime. To draw subtle distinctions along the lines suggested by appellant here is not feasible. It destroys the practical and common sense administration of the law. If a distinction is to be drawn, we submit that it must be from the nature of the crime itself and not as an all encompassing proposition of law. As to the crime of attempted theft we will not indulge in the niceties as to what acts constitute an "overt" act and what acts or other factors constitute "additional" evidence of intent. We refuse to extend the principle stated in *Vitale* to the crime of attempted theft from a person and therefore hold that an intent to commit the crime of attempted theft charged here could be inferred from the act of the appellant in grabbing the bag being held by the victim.

Moreover, in this case, there was other evidence for the court to consider on the question of the appellant's intent. His acts, to say the least, were strange and suspicious. His explanation as to why he grabbed the bag was patently questionable. In addition to what could only be described as a questionable act, no rock was found in the bag. The court obviously did not believe his explanation and was fully justified in finding him guilty.

Affirmed.

DONOFRIO, P. J., and SCHROEDER, J., concur.